# DOMINICUS CUTTS *vs.* THE YORK MANUFACTURING COMPANY.

*Mem.* SHEPLEY J. having formerly been consulted as counsel, did not sit in this case.

If an entry to foreclose a mortgage be made by one acting as attorney of a bank to which the mortgage had been assigned, without legal authority, and the fact that the entry had been made, is afterwards recited in an agreement executed between the bank and the assignees of the mortgagor, this is a sufficient ratification and adoption of the act of the attorney to make it the act of the bank.

If the stockholders of the bank, by their vote, authorize one of their directors to execute an instrument under seal, waiving and relinquishing the entry made by order of the bank to foreclose the mortgage, and the instrument be executed in pursuance of such vote, it is no waiver of the entry, unless the instrument is delivered over to the holder of the equity.

Cutts *v.* York Manufacturing Company.

Although the production of a deed by the party in whose favor it is made, is evidence of a delivery, which is to be referred to the day of its date; yet it is competent for the other party to show the true time of the delivery, or that it was obtained improperly, or against the will of the party whose signature and seal are affixed.

Where land is mortgaged to secure the payment of a sum of money according to the terms of a bond, and the mortgagee assigns the mortgage and bond to secure a sum of money due from him, it is by no means certain that it is not to be treated as real estate and thus the assignor of the mortgage entitled to the statute period of three years, after breach of condition, before his interest can be foreclosed. But if it is to be treated as a mortgage of personal property, if the prescribed condition has not been fulfilled, there exists, as in mortgages of land, an equity of redemption which may be asserted by the mortgagor, if he brings his bill to redeem within a reasonable time.

The institution and prosecution of a suit by the assignee of the mortgage against the assignor on the debt secured by the assignment, is evidence that the right to redeem is *still open.*

Although long before the expiration of the three years, the assignees of the mortgagor had paid to the assignees of the mortgagee the amount of their debt, and entered into the actual possession of the mortgaged premises, and had taken a written agreement to assign or convey to them on request, and to pay over the money, if the property should be redeemed; yet as the agreement provided, that the assignees of the mortgagee should proceed to consummate the entry to a foreclosure, if the assignees of the mortgagor requested it, *it was held,* that the entry to foreclose the mortgage was not waived as against them.

The release by the assignees of the mortgage to the assignor of "all the estate, right, title and interest in and to the said mortgaged premises by force of the conveyance made thereof by him to us, to hold in like manner as if he had never conveyed the same to us," does not preclude him from availing himself of the entry to foreclose the mortgage made by the assignees, but imparts to him all the power to pursue the entry to a foreclosure, which they would have had, if the mortgage had remained in their hands.

Where the question at issue was, whether an entry made by the assignees of the mortgagee against the owners of the equity of redemption, of which the tenants afterwards became the assignees, was waived and relinquished, it was held, that the declarations of the agent of the defendants, an incorporated manufacturing company, made to the assessors of a town, that the fee of the premises was in the assignees of the mortgagee, were either properly admitted in evidence, or had too slight a bearing on the issue to be a sufficient cause for granting a new trial.

THIS is the same action, wherein a case was reported in the fourteenth volume of the Reports of this State, 326. The same facts appeared, and some additional ones at the new trial, also before EMERY J. The demandant produced a re-assignment of the

mortgage from *R. Cutts* to *D. Cutts* from the *Atlantic Bank* to him, in the handwriting of the counsel of *Cutts,* in which the bank " do hereby in consideration of said payment, remise, release and forever quitclaim to the said *Dominicus Cutts,* all the estate, right, title and interest in and to the said mortgaged premises, by force of the conveyance made thereof by said *Dominicus Cutts* to us ; to have and to hold the same to him and to his heirs and assigns in like manner as if he had never conveyed the same to us." The demandant offered one of the assessors of *Saco* to prove that the demanded premises were taxed to the defendants in the year 1832, and that the agent of the company in the spring of the ensuing year requested that the property might be taxed to the bank, and stated, that it belonged to the bank, or that the fee was in the bank. This testimony was objected to by the tenants, but was admitted. The demandant offered a power of attorney purporting to be from the *Atlantic Bank* by *P. Cutler,* the president thereof, to *G. Thacher,* authorizing him to make an entry to foreclose the mortgage. This was objected to without first showing authority for that purpose. The fifth article of the by-laws of the bank was read, giving to the president " the general superintendence of the concerns of the bank, to make loans, discounts and purchases of drafts," " provided that if the director of the week be present, or any other director, his approbation shall be first obtained." And also the seventh article, authorizing the president and cashier to execute deeds and other papers in pursuance of any vote of the directors. The Judge ruled, that this was sufficient, and the paper was admitted. The demandant also offered in evidence, an agreement under seal between the bank and the company in the handwriting of a counsellor at law of *Boston,* duly executed by *H. F. Baker,* for the bank, dated *July* 1, 1832, and proved, that the tenants admitted that the paper was actually executed and delivered, *Dec.* 14, 1833. This recited the payment by the company to the bank of the amount due on the mortgage, and the bank engaged to assign the mortgage to the company at any time on request, and if it should be foreclosed, to convey the land, or if redeemed, to pay over the money, " together with all the benefit and advantage of the entry upon the land and property made by said bank for the purpose of creating a forfeiture of the mortgaged pre-

mises;" "meaning to release and quitclaim to said company, all the right, title, property, claim and advantage of the bank in and to the premises, and to constitute, authorize and empower the company to do all things necessary to consummate the possession and use thereof, and to have and to hold the same forever." The company therein agreed to cause the entry to be enforced for the use of the company, and to "execute any other and further conveyances, that might be tendered by the company," "to transfer their rights, powers and property in the premises to the company." The tenants proved, that they paid to the bank the amount due from *Cutts* to the bank, and for which they held the mortgage as security, on *July* 3, 1832. The demandant also proved, that *Pliny Cutler,* the president of the bank, was also the treasurer of the company. The tenants proved, that the right of *Richard Cutts* to redeem the premises had been sold by his creditors, and had been afterwards purchased by the company for the sum of $4500. They also offered in evidence a paper, purporting to be signed and sealed by the *Atlantic Bank* to the company, stating, that the entry to foreclose was never intended to be enforced against the company, and waiving all claim under it, dated *Dec.* 14, 1833, in the handwriting of a counsellor at law in *Saco,* at the request of the agent of the company, excepting the date and the name of the person who was to execute it for the bank, which were in the handwriting of one of the directors of the bank, who executed the paper by authority of a vote of the stockholders of that date, proved to have been passed and recorded on that day. The demandant objected to the admission of this paper, and the tenants offered the depositions of the subscribing witnesses, and of the director of the bank who filled up the date, and other testimony, to prove the execution and delivery of the paper. The demandant proved by his counsel, that the same paper was shown to him in *Boston* by *Pliny Cutler,* in the director's room of the *Atlantic Bank* on *Dec.* 20, 1833.

Whether the paper dated *Dec.* 14, 1833 was executed, and was delivered, prior to *December* 17, 1833, when *Cutts* redeemed of the bank, was submitted for the determination of the jury. On this point in the case, the counsel for the tenants requested the Judge to instruct the jury, that as the instrument of *Dec.* 14, 1833, was

drawn up by the attorney of the company at their request, and by them presented to the bank for execution, that if it was actually executed on that day by the bank, that no delivery over by the bank to the company was necessary to give the instrument its legal effect as a waiver or relinquishment of any act or acts of the bank, at or before that time, to foreclose the mortgage against the company, as owners of the equity. The Judge declined to give this instruction. The papers in the case, with the report, extend to 116 folio pages, but it is believed, that the *questions of law* will be sufficiently understood from what already appears in this and in the former case.

The jury returned a verdict for the demandant, and on inquiry by the Court at the request of the counsel for the tenants, the jury answered, that they were not satisfied, that the said paper, dated *Dec.* 14, 1833, " *was executed and delivered*," on said fourteenth day of *December*, or before the seventeenth of that month ; and on further inquiry, they answered, " that they were not fully satisfied, that the said instrument was *executed* on said fourteenth day of *December*, or before said seventeenth day before the tender." If the rulings and decisions of the Judge were correct, the verdict was to stand, unless it should be set aside on the motion for a new trial.

The tenants on the next day filed a motion for a new trial.

1. Because the verdict is not only without evidence, but against all the evidence in the case, and opposed to the uncontradicted testimony of several unimpeached witnesses.

2. That the jury have answered inquiries, whereby it appears, that they were not fully satisfied, that an instrument dated *Dec.* 14, 1833, was executed on that day, or before the 17th of the same month, when the execution of that instrument was distinctly proved by several credible witnesses, corroborated by strong circumstantial evidence, and not opposed by any testimony whatever ; and when the fact, that said instrument was executed at the time aforesaid, was very material to the determination of the issue on trial, and having a strong, if not a conclusive, tendency to determine the issue in favor of the tenants.

3. That the verdict was against law and evidence.

*J. Shepley*, for the tenants, contended : —

1. No authority was given by the *Atlantic Bank* to take possession to foreclose. The fifth article of the by-laws, giving the president the general superintendance, gives no power to sign a power of attorney, because the mode in which papers are to be signed for the bank is specially provided in the seventh section. That mode is by the signatures of the president and cashier with the approbation of the directors by vote, or by some person authorized by a vote of the stockholders. Neither course was adopted. The question, whether this was ratified or not, was not made, and was not submitted to the jury. But were it open, there was no ratification in any manner unless by the paper which releases and waives the entry.

2. The declarations of the factory agent were improperly admitted. The only question submitted to the jury was, whether the instrument dated *December* 14, 1833, was executed and delivered before the seventeenth of that month. A conversation in 1832, or in the spring of 1833, respecting taxing the property, in which the agent took a part, could have no relevancy to that issue. The declarations of an agent are inadmissible, unless made when in the performance of the act. *Polleys* v. *Ocean Ins. Co.* 14 *Maine R.* 153 ; *Gooch* v. *Bryant*, 13 *Maine R.* 386. Here the agent took no part in the execution or delivery of the paper.

3. The instruction requested ought to have been given.

Nothing more was necessary to constitute a waiver of an entry to foreclose a mortgage, than the assent of the parties to the waiver. The proof of the entry was by parol in this case, and if the tenants had been living persons, the waiver might have been also by parol. A vote on the records of the bank, that they would waive the entry is sufficient. Any vote, or act, of the bank, which shows such intention, is sufficient. Had they ordered a second entry to have been made, that would have been a waiver of the first. The vote of the stockholders on this subject on the 14th of *December* is in itself a waiver, if the paper had never been executed. The waiver of an entry has no resemblance to a conveyance of land, where the execution and delivery of a deed are necessary to pass the title. In *Quint* v. *Little*, 4 *Greenl.* 495, this Court held, that the extension of the time of payment, proved

by a letter not under seal, was a waiver.   In *Fay* v. *Valentine*, 5 *Pick.* 418, a second entry to foreclose was held to be a relinquishment of a former one, and when the second entry was made without the knowledge of the mortgagor.   The positions we take, are understood to have had the assent of this Court in the former trial of this case.   14 *Maine R.* 333.   And the same are found in *Dexter* v. *Arnold*, 1 *Sumner*, 117.

4. The verdict should be set aside, because the demandant, by evidence introduced by himself, and appearing in the case, has shown, that the mortgage had not been foreclosed.   The paper of *July* 1, 1832, was introduced by him, acknowledging the receipt by the bank from the company of the full amount of the sum due the bank.   The fact of payment in *July*, 1832, is also proved by other evidence.   The company became beneficially interested, and could enforce their rights by law.   The mortgage is but a mere chattel, and not real estate, and but an incident to the debt, and will pass by the assignment of the debt, at least in equity.   *Crane* v. *Marsh*, 4 *Pick.* 131.; *Wilson* v. *Troup*, 2 *Cowen*, 195; *Jackson* v. *Blodgett*, 5 *Cowen*, 202 ; *Coles* v. *Coles*, 15 *Johns. R.* 319 ; *Crosby* v. *Brownson*, 2 *Day*, 425 ; *Vose* v. *Handy*, 2 *Greenl.* 322.   It would be as absurd to suppose that the bank, after this, could go on and foreclose against the company, as that they could proceed and foreclose against *Cutts* after he had paid the debt.

5. The reassignment of the mortgage by the bank to *Cutts*, limits him to the mortgage, as it was when assigned, and restricts him, as was intended, from setting up any claims under *Thacher's* entry.

A word only on the motion for a new trial.   The only reliance for evidence contradictory to the testimony on the part of the tenants, to prove the execution and delivery of the instrument of *Dec.* 14, 1833, was the statement by the counsel of *Cutts*, that he saw the paper in the hands of *Mr. Cutler* at the bank after *Dec.* 17. *Cutts* proved that *Mr. Cutler* was not only president of the bank, but treasurer of the company, whose duty it was to keep the papers.   The cashier is the proper keeper of the papers of the bank. It does not therefore contradict, but confirms the testimony of the other witnesses.

*Daveis*, who argued the motion for a new trial, and replied for the tenants, added to the points made by the opening counsel : —

The paper of *Dec.* 14, being found in the hands of the tenants, is presumptive evidence of its having been duly delivered at the time of its date.

The mortgage and bond were mere chattel interests, and therefore when *Cutts* had neglected to make payment when his debt became due, he lost all right to redeem.

*A. G. Goodwin* argued for the demandant, and cited authorities to the following points.

The declarations of the agent of the company were rightly admitted; but if they were not, the facts stated are wholly immaterial, and ought not to occasion a new trial. 14 *Maine R.* 116, 141, 201, 228; 13 *Maine R.* 439; 6 *N. H. Rep.* 80.

The attorney of the bank had sufficient authority to take possession. And his proceedings were afterwards ratified by the bank, and that is sufficient. 8 *Mass. R.* 113; 12 *Mass. R.* 185; 17 *Mass. R.* 103; 6 *Mass. R.* 193; 1 *Pick.* 372; 3 *Pick.* 232; 3 *Greenl.* 429; 5 *Greenl.* 38; 7 *Wend.* 377; 2 *Wend.* 561.

The instructions requested were rightfully withheld.

The release or assignment of all such interests must be by deed or note in writing. *Stat.* 1821, *c.* 53, § 2; 11 *Mass. R.* 533; 6 *Pick.* 489. A delivery of a deed is necessary. 3 *Greenl.* 141; 7 *Greenl.* 184; 12 *Mass. R.* 403; 13 *Pick.* 69; 2 *Stark. on Ev.* 271, *note* 1; *Cruise Dig. Deed, c.* 2, § 74, 80; 12 *Wend.* 105; 13 *Johns. R.* 235; 5 *Mason,* 161; 15 *Wend.* 656. In law any writing under seal, being a specialty, is a deed. 2 *Pick.* 345; 2 *Bl. Com.* 306. A bond takes effect from its delivery. 12 *Mass. R.* 403. A delivery of articles of agreement under seal is necessary. 5 *Greenl.* 336. A delivery from a corporation is necessary. 1 *Co. Lit.* 36, *(a)*; 9 *East,* 360.

The signing for a coporation must be by authority, and the common seal must be affixed by the officer in whose custody it is, or by some person specially authorized. *Angel & A. on Corp.* 113, 168; 5 *Wheat.* 326; 16 *Mass. R.* 42; 1 *Greenl.* 339; 2 *Pick.* 353. A common seal does not authenticate itself, but must be proved by testimony to be genuine. 8 *T. R.* 303; 10 *Johns. R.* 381; 7 *Serg. & R.* 156; 1 *Stark. Ev.* 261, *note* 1; *Angel & A. on Corp.* 115; 3 *East,* 221; 15 *Wend.* 256. It is of the essence of a contract, that it be accepted by both parties. *Rob. on Fr.*

108; *Angel & A. on Corp.* 138; 13 *Pick.* 75. The act from which the assent of a corporation may be inferred, must be a corporate act. 1 *Pick.* 297; 7 *Pick.* 344; *Angel & A.* 137. All that can be inferred from the fact that one is an agent of a corporation, is the power to do the ordinary business of the company. 7 *Conn. R.* 219; *Angel & A.* 171. The deed or instrument must come to the possession of the grantee with the consent of the grantor. 7 *Greenl.* 184. " To show what acts are necessary, in the case of an individual, from which the acceptance may be inferred." 9 *Mass. R.* 307; 10 *Mass. R.* 456; 12 *Mass. R.* 456; 17 *Mass. R.* 213; 7 *Pick.* 29,91; 12 *Pick.* 141; 13 *Pick.* 69; 3 *Greenl.* 141; 7 *Greenl.* 181. " What acts necessary, in case of a corporation, from which to infer assent or acceptance." 1 *Mass. R.* 159; 8 *Mass. R.* 292; 10 *Mass. R.* 397; 14 *Mass. R.* 58, 167; 17 *Mass. R.* 1; 3 *Pick.* 335; 7 *Pick.* 344; 12 *Wheat.* 64; 5 *Mason,* 60; 13 *Pick.* 69. Any person affected by a deed may at any time question its validity, and show that in fact it was not duly executed and delivered. 2 *Wend.* 308. Whether a deed was executed and delivered is a question for the jury. 10 *Wend.* 310.

*Goodwin* also argued against the motion for a new trial.

The opinion of the Court was drawn up by

WESTON C. J. — The counsel for the tenants objected to the legal admissibility of a certain declaration of *Samuel Bachelder*, testified to by *Cotton Bradbury*. *Bachelder* was the general agent of the tenants, and in 1833, appeared before the board of assessors in *Saco*, for the purpose of inducing them not to set the premises in question, in their assessment, to the company, against whom they had previously been taxed, stating as a reason, that they belonged to the *Atlantic Bank*, or that the fee was in them. And thereupon the change proposed, was made by the assessors. This declaration must be regarded as a part of the *res gesta*, and as such admissible. It was directly connected with the business he was transacting, and must necessarily have had an influence upon it. But if the law were otherwise, its bearing upon the question of title, which must depend upon other evidence, is so slight, that it would deserve

serious consideration, whether the verdict ought to be disturbed upon this objection.

It is contended, that the power of attorney to *George Thacher, Esq.* to take possession of the demanded premises, for the purpose of foreclosure was not made by competent authority. It is a document full and formal in its terms, executed by the President of the Bank, claiming to act in their behalf. By the seventh article of the by-laws of the stockholders, it is provided that the president and cashier, being authorized by a vote of the directors, may execute any of the powers given to the directors by attorney. And by the fifth article of the directors' by-laws a general superintendence of the concerns of the bank is confided to the president.

The necessity of resorting to the aid of an attorney, is of ordinary occurrence, and the president and cashier are the usual and accredited organs of a bank in much of its business. The prosecution of legal remedies on bonds, drafts, notes or other securities over due, must often become necessary in a bank having a large capital and discounting extensively. There might be a convenience in clothing the president or cashier with the power of resorting to these remedies, with such incidental authority, as their effectual prosecution might require. Taking possession of estates mortgaged, for the purpose of foreclosure as the law then stood, is one of these remedies.

It is not unlikely, that by a practical construction of their by-laws, it was understood, that the president had power, in virtue of the right given him of general superintendence to appoint an attorney to enter and take possession of an estate to foreclose a mortgage. Whether such a deduction of authority can be legally sustained or not, we deem it unnecessary to decide, as by the agreement, under the seal of the parties, bearing date, *July* 1, 1832, and which is admitted by the tenants to have been duly executed on behalf of the bank, as well as of the company, the entry made upon the premises, for the purpose of foreclosure, is expressly recited and the president, directors and company of the bank covenant to cause that entry to be made effectual. By the same instrument, the company were to lend their aid to that measure; and upon the contemplated consummation of the foreclosure, the bank

covenanted to convey the premises to the tenants. If there was before any want of authority, the entry, and the power under which it was made, was by that agreement adopted and confirmed. And this was done with the privity, consent and cooperation of the tenants.

With regard to the instructions requested they appear to us to have been properly withheld. Delivery is essential to a deed. The party executing it is not bound, so long as he keeps it under his own control and possession. *Chadwick* v. *Webber, 3 Greenl.* 141. The fact that the deed was prepared by the counsel for the tenants, does not dispense with delivery. It may be evidence, that they would have accepted it, and that they desired its execution, but delivery is the act of the party who executes, and it must be done with a view to give the deed effect.

A motion is made to set aside the verdict as against evidence or the weight of evidence. The jury responded, that they were not satisfied that the instrument dated *December* 14th, 1833, was executed and delivered prior to the tender on the 17th; and further, that they were not satisfied, that it was executed, that is, as we understand their answer, signed and sealed, on that day. Of this latter fact, the direct evidence is strong. But upon this part of the case the question is, whether it was an operative and effectual instrument, prior to the seventeenth of *December*, when the money secured to the *Atlantic Bank* was paid by the demandant, and a reassignment of the mortgage executed.

It is insisted, that the production of the instrument by the tenants is evidence of a delivery, which is to be referred to the day of its date. Such might be the effect of this evidence, if there were no opposing proof. But it is competent to show, that possession of the deed was obtained improperly, and against the will of the party, whose signature and seal are affixed. The true time of delivery is also open to inquiry, notwithstanding its date. *Benj. Dodd* deposes, that he saw this paper which he witnessed, signed, sealed and delivered, but he does not say to whom delivered, or whether to any one in behalf of the tenants. *Mr. Goodwin* positively testifies, that the instrument was in the hands of the president of the bank in *Boston*, on the 20th of *December*, with some writing on the blank leaf, which he was not permitted to see, and which has been

since torn off. This testimony justified the answer of the jury, that they were not satisfied, that it was executed and delivered prior to the seventeenth, when the money was tendered by the demandant.

But it is urged, that the interest of the demandant had vested absolutely in the bank, in trust for the tenants, long prior to the payment or tender by him. And this assumption is upon the ground, that the demandant's interest in the mortgage was personal property, and that upon his assignment to the bank by way of mortgage, they became the absolute owners, upon his failing to pay within the time, limited in the condition of that assignment.

Many of the authorities, cited for the tenants, treat a mortgage as a mere incident to the debt it is intended to secure, and as standing in the relation of an accessary to its principal. We are not however prepared to say, that he who mortgages an interest in real estate, which he holds himself in mortgage, is not entitled to the statute period of three years, after breach of condition, before his interest can be foreclosed. *Stat.* 1821, *c.* 39. The statute is broad enough in its terms to embrace such a case, and an equity of redemption is a favored claim. But from the view we have taken of the case, we do not deem it necessary to decide this point.

The doctrine in relation to a mortgage of personal property, is very clearly laid down by *Mr. Justice Story* in his commentaries, to which we refer, without adverting to the authorities, by which he is sustained. He says, a mortgage of personal property differs from a pledge. The former is a conditional transfer or conveyance of the property itself; and if the condition is not duly performed, the whole title vests absolutely at law in the mortgagee, exactly as it does in the case of a mortgage of lands. 2 *Story on Eq.* 296, § 1030. He adds, that in mortgages of personal property, although the prescribed condition has not been fulfilled, there exists as in mortgages of land, an equity of redemption, which may be asserted by the mortgagor, if he brings his bill to redeem, within a reasonable time. *Ib.* 297, § 1031. That the right to redeem was open to the demandant, when he paid the money, is deducible from the fact, that the bank, and in concert with them the tenants, treated the assignment of the mortgage as security only, by prosecuting a suit against the demandant, for the principal debt thus secured which was not discontinued until after they had received their money.

If they had a right to hold, and did hold, the collateral security as absolutely their own, it being of sufficient value their debt was paid. Their suit for the debt is, by fair implication, an admission that the equity of the demandant was still open, and his right to redeem not foreclosed. Whether therefore the mortgage assigned to the bank is to be regarded as personal property, or an interest in real estate, we are of opinion, that the demandant had a right to redeem, when he paid the money for that purpose to the bank.

It has been argued, that the agreement, under the date of *July* first, 1832, although executed in fact on the fourteenth of *December*, 1833, vested the beneficial interest in the debt, due from the demandant to the bank as well as the collateral security, in the tenants, by relation from the time of its date ; and that it operated as a waiver of the entry to foreclose against the assignees of *Richard Cutts*, thirteen fifteenths of whose interest had been purchased by the tenants. But it is very manifest, from the terms of that agreement, that the tenants at that time deemed it for their interest to keep up and consummate the entry, which had been made for foreclosure. Although antedated, four days only were in fact wanted to complete that consummation. Perhaps nothing was then less expected, than the actual payment of the money, which was not a small sum, within that short period by the demandant. But to be prepared at all events, a formal waiver of the entry was executed, as the evidence shows at the same time, not very consistent with some of the avowed objects of the other instrument. As they had different dates, this discrepancy would not be apparent, and both together afforded the means of proving or disproving a foreclosure, as might be most for the interest of the tenants.

We do not mean to be understood, that any thing morally wrong was designed. The demandant would still be secure in all, to which he was equitably entitled. If the foreclosure took effect, his debt was paid ; if it did not, it would remain a lien upon the estate. The appreciation in value, the tenants were doubtless anxious to secure to themselves, it having been created, as they allege, by their operations. It turns out, that they were not able to prove affirmatively, which they were bound to do, the seasonable delivery of the instrument of waiver. It does not appear that

counsel was consulted subsequently to the time, when the paper was drafted in *Saco*, two days prior to its date, and it may have been thought, that it might safely be retained by the bank, as a paper not likely to be wanted.

It is said, that it could not be the intention of the contracting parties to the agreement, dated *July*, 1832, to keep up the entry made by *Mr. Thacher*, against the tenants, for whose benefit that agreement was made. That entry was to foreclose the mortgage, executed by *Richard Cutts*. It must have been understood also to have the effect of foreclosing the demandant. This is to be inferred from the terms of the paper, dated *December* fourteenth, 1833. But as a waiver of the entry against the assignees of *Richard* might defeat a foreclosure of the demandant, which if effectual became such as an incident to that entry, the instrument of *July*, which is elaborately drawn, provided for a consummation of that entry generally. If the tenants have been disappointed in the results, they cannot, in our opinion, escape from the difficulties, in which they have become involved, by deducing a waiver of the entry from the agreement of *July*, without doing violence to the obvious meaning of its terms.

We cannot understand, that the reassignment, the day before the three years expired, interrupted or arrested the foreclosure. The entry having been made by the assignees of the demandant, between whom and himself there was a direct privity, continued to be available for his benefit. It would be unreasonable to hold, that he must begin *de novo*.

*The motion for a new trial is overruled.*