[*General Term, April,* 1872.]

## PEOPLE'S INSURANCE COMPANY *v.* FRED. STRAEHLE.

S. had, upon a lot of ground, a lease for years only, and there had erected a feed mill, containing steam machinery to operate the mill. He also carried on a feed store. All was insured against loss by fire. During the continuance of the risk, S. agreed, in writing, to exchange all the insured property with T. for lands of the latter, the parties to warrant

their respective titles, and to give each other immediate possession, which possession was given. Next day S. discovered that there was a mortgage upon T.'s land for $4,200 and interest, upon which a suit to foreclose had been brought, and was pending. T. then agreed to pay off the mortgage, and the parties executed deeds, and deposited them with a third person, in *escrow*, until such mortgage lien should be paid by T. Afterward, S., without T.'s knowledge or consent, obtained T.'s deed from the custodian of it, and had it recorded, when he returned it to such custodian, who has ever since retained both deeds. Subsequently, the S. property, so insured, was destroyed by fire, and S. notified the insurer of the loss, when the latter advised him that it would not pay the same, because he did not own the property when it was destroyed. T., instead of paying off the mortgage on the land he let S. have, rebuilt the mill, and refurnished it as it was before. The T. land was afterward sold at judicial sale upon the mortgage, and S. purchased it, and the sale was confirmed to him. He subsequently sold the land to a stranger.

*Held*, 1. That S. had an insurable interest in the property he had delivered to T., at the time of the loss, to the extent, at least, of the $4,200 mortgage, and could recover *pro tanto* upon his policy of insurance, he having insurance in other companies.

2. The answer does not aver that T. rebuilt the property, and, as the evidence shows he did so after refusal to pay and after suit brought, the court can not consider the effect of such rebuilding upon the plaintiff's right. But if S. were to recover the property from T., he would have to pay for such improvements; and a stranger may voluntarily donate to a party insured the amount of his loss, without thereby working a discharge of the insurer.

3. The right to subrogation, in a proper case, can not be enforced until *full* payment of the liability, which gives rise to such right. Upon mere *part* payment, there is no right of subrogation as to such part.

4. A refusal on the part of an insurer to pay a loss excuses the insured from making preliminary proof of his loss, as required by his policy.

*Matthews, Ramsey & Matthews*, for plaintiff in error.

*W. C. Mellen* and *A. Taft & Sons*, for defendant in error.

YAPLE, J. On and prior to January 31, 1870, the defendant in error, Straehle, owned a lease upon ground in Cincinnati, for twenty years from October 1, 1858, which lease was not, by its terms, renewable, and did not give the lessee the privilege of removing his improvements at the end of the term. Upon this ground, Straehle owned a

frame building, occupied by him as a mill and feed store, and' also a frame stable. In the mill he had machinery, engines, boiler, mills, tools, and fixtures, and a stock in trade, consisting of grain, etc. On January 31, 1870, he, for a premium paid of $117.25, took out a policy of insurance against fire, for one year, in the People's Insurance Company, the plaintiff in error, in the amount of $3,350, distributed as follows: on building, $1,000; on stable, $100; on stock, $500; on machinery, $1,500; on two horses in the stable, $200; and on harness, $50. He had the privilege of effecting other insurance upon all the property, and availed himself of it. He effected, in the Citizens and Buckeye Insurance Companies, further insurance in the sum of $1,500 on the building, $2,500 on the stock, $1,500 on the machinery, making his insurance, in all, $8,750.

On June 30, 1870, he agreed with one Frederick H. Thiesing to exchange his lease, buildings, machinery, stock in trade, etc., for some twenty-nine acres of land, owned by the latter, near Newport, in Kentucky. Their agreement was in writing. Each was to make to the other a warranty deed, and to take immediate possession of the exchanged property, which exchange of possession took place accordingly, Thiesing selling the stock in trade as opportunity offered, and adding to it by purchases, as required by his business, and he has ever since continued in possession. Straehle took possession of the property in Kentucky.

Both Straehle and Thiesing swear that it was understood between them, that if the title of either should prove not to be clear, there should be no exchange, and that such term was not incorporated into the contract, by mutual mistake.

Christian Annis, who drew up the agreement, swears that there was no mistake in it, but he regards the legal effect of the agreement (and in this he may be correct) to be, that there should be no exchange if either party should be unable to give the other an unincumbered title.

The day following the agreement, Straehle, with an attorney, went to Kentucky, and examined the title to the

Thiesing land. They found it incumbered by a mortgage to one Fred. Lander for $4,200, to foreclose which a suit had been brought, and was then pending.

On July 4, 1870, the parties again met, and Thiesing promised to pay off this mortgage; whereupon the parties executed and acknowledged warranty deeds to each other, and, by agreement, the deeds were deposited, in *escrow*, with their attorney, Wendell Joachim, to be delivered to the parties when their titles were clear.

Some short time afterward, Straehle obtained the deed of Thiesing for the Kentucky property from Joachim, and procured it to be recorded, and then returned it to Joachim, who has ever since held both deeds. Thiesing did not know of, or consent to, Straehle's taking the deed and getting it recorded.

On August 12, 1870, the insured property was destroyed by fire, at which time there remained only about $300 worth of the stock Straehle had delivered to Thiesing. It was barley and rye. The building burned was worth from $2,500 to $2,800, and, with the machinery, some $7,000 to $8,000, or $9,000. Straehle notified the company of the loss. Shortly afterward it notified him that it would not pay the loss, as he did not own the property when the fire occurred. This excused Straehle from making any proof of his loss. He, on October 19, 1870, brought this suit, and recovered a judgment against the insurance company for $1,273.34 and costs, which judgment this petition in error is prosecuted to reverse.

The defendant, in its answer, denied that, at the time of the loss by fire, the plaintiff had any insurable interest in the property, setting up the sale, etc., to Thiesing. It also claims in the answer that, if it be liable to the plaintiff because of any incumbrance, plaintiff could look to the property for, as against Thiesing, it, on payment, will be entitled to be subrogated to plaintiff's rights; but it insists that plaintiff bought in the Kentucky property at a judicial sale upon the mortgage, and has since sold the same and

extinguished such lien, and destroyed defendant's rights of subrogation.

The Kentucky property was sold at judicial sale, upon the mortgage, in January, 1871, for $3,200. The plaintiff purchased it, and, as is required there by law, gave his notes, with sufficient sureties, for the amount of the purchase money.

In June, 1871, the plaintiff sold it to one McMurray for $4,500, McMurray giving his notes for Straehle's purchase money notes, and a mortgage on Tennessee lands for the balance.

The evidence shows, though the fact is not stated in the pleadings, that, since the bringing of the suit, Thiesing has, at his own cost, rebuilt the property, and furnished it with machinery, so that it is now more valuable than it was at the time of the fire. It is also proved that, at the time of the fire, and afterward, Thiesing had the money in his pocket to pay off the mortgage on the Kentucky property, but, after the fire, he chose not to do so, but applied it in rebuilding and replacing the buildings and property destroyed. If the plaintiff be entitled to recover for anything at all, it is conceded that the verdict and judgment are not too large, even if his interest in the property was only to the extent of $4,200, the amount of the mortgage on the Kentucky property.

The controlling question in the case, then, is, whether, at the time of the fire, August 12, 1870, Straehle had any insurable interest remaining in this Cincinnati property?

Now, after the parties gave possession to each other, on July 1, 1870, the contract was still not fully executed, whether we consider Straehle's Cincinnati property realty and personalty, or as all personalty. He had as yet no complete title to the Kentucky land, and if a good title could not be made to him for it, he had the right to a rescission of the entire contract, and then to the possession of his Cincinnati property, and to be compensated for such of his stock as Thiesing might have disposed of in the meantime,

subject to be set off, to that extent, by his use of the Kentucky property; nor had Thiesing a title to Straehle's insured property.   Where executory contracts for the sale or exchange of property are made, they can not be enforced, but will be rescinded, as against the party who can not make a good title, on discovery of any defect in the title. Then, on July 4, 1870, when Straehle had discovered the mortgage upon the Kentucky land, he was entitled to a rescission of the contract, and to be repossessed of all the property he had parted with the possession of, whether the contract was, or was not, that, if either party could not make to the other an unincumbered good title, there was to be no exchange.   A contract to that effect, parol or written, could not have added to this right of annulling what had been done, and to be put *in statu quo*.   On that day both parties recognized this right on the part of Straehle, and they agreed to, and did, execute their respective conveyances, and deliver them, *in escrow*, to Joachim until Thiesing should discharge the mortgage upon the Kentucky property, which he has never done.

It is true that, some days after the deposit of the deeds with Joachim, Straehle called for and got possession of Thiesing's deed, and took it over to Kentucky and had it recorded, and then returned it to Joachim, the person appointed to hold it.   This was done without the knowledge or consent of Thiesing.   Taking that deed to Kentucky and having it recorded without Thiesing's knowledge could not *convey* to Thiesing Straehle's property in Cincinnati; and, for that reason, being unauthorized, could not even convey to Straehle the Kentucky property.   Thiesing could have compelled the cancellation of such record; and he is not shown ever to have consented to the act.   Its only purpose could have been to prevent Thiesing from further incumbering or conveying the land, as it would put mortgage lenders and purchasers upon their guard.

On January 20, 1871, the Kentucky property was sold at master commissioner's sale, on a judgment and decree ren-

dered upon the mortgage against Thiesing for $4,276.46 · and costs, to Straehle for $3,267.71, on six and twelve months' time, he securing the amount as required by the order of sale, and the sale was confirmed to him.  In June, 1871, he sold and conveyed the property, as hereinbefore stated.

This purchase at master's sale by Straehle, and obtaining the title thereby, is wholly distinct from, and independent of his contract with Thiesing.  The latter bound himself to pay no part of the money, or to reimburse Straehle for what he might pay.  Straehle had the same right to buy it as he did, as anybody else would have had, and an equal right to be vested with the title to the land, by virtue of the sale alone, that any other purchaser would have had. Hence, this purchase and the subsequent sale of the Kentucky land, by Straehle, are things entirely distinct from his contract with Thiesing.

Straehle, then, always had, to say the least, an interest and property in the Cincinnati feed mills and store, machinery, etc., to the amount of such Kentucky mortgage, which amount equaled the unpaid purchase money, and for which he was entitled to repossess himself of all the property remaining undisposed of, upon equitable terms.

This contract of sale, then, being executory, the purchase money being unpaid to the extent, at least, of the $4,200 mortgage, and no deed ever having been made to the purchaser, or complete title vested in him, Straehle was not divested of his interest, so as to bar his right of recovery to the extent of his loss.  *Perry Ins. Co.* v. *Stewart*, 19 Penn. St. 45; *Masters* v. *Madison Mutual Ins. Co.*, 11 Barb. (N. Y.) 624; *Shotwell* v. *Jefferson Ins. Co.*, 5 Bosw. (N. Y.) 247; *Wheeling Ins. Co.* v. *Morrison*, 11 Leigh. (Va.) 354; *Herkimer* v. *Ross*, 27 N. Y. 163; *Vairin* v. *Canal Ins. Co.*, 10 Ohio, 223; 1 Phil. Ins., last ed., sec. 189, p. 113, also, sec. 190; and many other decisions might be cited to the same effect.

That there was no delivery of the deed to Straehle or Thiesing, see 2 Wash. Real Prop. 577, sec. 20, and cases

there cited; *Cutts* v. *York*, 18 Me. 190; 2 Washb. R. P.
′81, sec. 30; 585, sec. 44; *Green* v. *Putnam*, 1 Barb. (N. Y.)
′00, 504; 2 Washb. R. P. 586, sec. 44; *Stiles* v. *Brown*, 16
Vt. 563, 567; *Rhodes* v. *Gardner*, 30 Me. 110; *Mitchell*
v. *Ryan*, 3 Ohio St. 377; *Ogden* v. *Ogden*, 4 Ohio St. 182,
195, 196; *Leonards* ads. *Maynard*, 10 Mass. 456; *Simpson*
v. *Thurston*, 3 Met. 281.

We see nothing to change the case in the fact that, after
the fire, instead of paying off the mortgage on the Ken-
tucky property, Thiesing took his money, and rebuilt the
burned property.   He certainly, so far as the insurance
company was concerned, had the right to do so.   It had no
claims upon or control over him.   It was in no *privity* of
contract with him and Straehle in relation to their ex-
change.   But it is claimed from the evidence, that Thiesing
has replaced the property burned.   This is not set up in the
answer, and it has been done since suit brought.   We can
not consider it unless it were pleaded, for it is a distinct,
independent fact, arising since the bringing of the suit.
The action must be tried upon the facts as they existed at
the time it was brought, unless subsequently occurring facts
be specially pleaded.   *Clark* v. *Clark*, 20 Ohio St. 136; *Shot-
well* v. *Jefferson Ins. Co.*, 5 Bosw. (N. Y.) 247.

But such rebuilding by Thiesing does not help Straehle.
If he were to recover the property from Thiesing, he would
have to compensate him for such improvements.   Though,
if even Thiesing, or any third person, had donated to Straehle
the full amount of his loss, that would not release the in-
surance company.

The case of *Godsall* v. *Boldero*, 9 E. 72, does not apply to
this case.   There a creditor of William Pitt had insured
his life for the amount of what the latter owed him.   After
Pitt's death, the English government appropriated money
to pay all his debts.   His executors paid this creditor in
full, with such moneys, *before* suit brought.   Afterward suit
was brought against the insurer by the creditor on the
policy.   The court held that he had been paid.   But the

insurance company paid the plaintiff the money in the court-room, so soon as judgment had been pronounced in their favor, and other insurance companies refused to avail themselves of the decision. It has since been overruled in cases of life insurance; and it is not in point here; neither is the case of *Mathewson* v. *Wes. Assu. Co.*, 10 Low. Can. 8; and see 1 Pars. Mar. Ins. 226, 229, and notes; *Kernochan* v. *N. Y. Bowery F. Ins. Co.*, 5 Duer, S. C. 1; 17 N. Y. 428; *King* v. *State Mut. Ins. Co.*, 7 Cush. 1; *Foster* v. *Ins. Co.*, 2 Gray, 216. But upon the precise question decided in *King* v. *Mut. Ins. Co.*, 7 Cush. 1, and which is not involved, we think, in this case, the decisions are conflicting. 2 Dutch. 557.

As to the insurance company's right of subrogation to Straehle's rights against Thiesing, it has no such right until full payment to Straehle of his loss; and if part payment would not give such right, no payment at all can not. On this subject see *Neptune Ins. Co.* v. *Dorsey*, 3 Md. Ch. 338; *Kyner* v. *Kyner*, 6 Watts, 227; *Bank of Penn.* v. *Potius*, 10 Id. 152: *Hardcastle* v. *Commercial Bank*, 1 Harr. 374; Dixon on Subrogation, 122, 123, 124; and other cases above cited. And as Straehle parted with the Kentucky property, which he bought at judicial sale, after suit brought, that question can not affect his right of recovery. *Insurance Co.* v. *Woodruff*, 2 Dutch. 542.

But Straehle's purchase of the Kentucky property, under the sale upon the mortgage, vested the property in him, by virtue of its own authority, in the same manner, and to the same extent, as if he had been an entire stranger to Thiesing. It has no connection with any of their bargains in relation to the exchange of property, so far as the testimony before us goes. Straehle had a perfect right to purchase at that sale, and thereafter to do with the property what he pleased; so the insurance company has not been deprived of any right of subrogation by means of that transaction. If its charter would permit it, it might have bought the property to protect itself, as well as Straehle, if that was a

way in which either might find any indemnity. It is difficult to see how the $4,200, which Thiesing never paid Straehle, and which he did not, because Lander held a mortgage on his Kentucky property for that amount, could ever be a right to which this insurance company could be subrogated at all. The extent of Straehle's right against Thiesing, from this point of view, is a mere personal claim.

. Indeed, it is difficult to see why Straehle was not entitled to recover against the insurers the entire loss occasioned by the fire, less the stock Thiesing had put in the store, or why Straehle may not, at any time, recover the Cincinnati property from Thiesing, paying him for lasting and valuable improvements, and for the use of the Kentucky land prior to his purchase at the sale. If all Straehle's insured property was personalty, still, upon the facts of the case, the title thereto did not vest absolutely in Thiesing, but remained in Straehle.

It follows, that the charges given by the court to the jury on the trial were correct; that those not given were properly refused, and that the judgment should be, as it is, hereby affirmed.